# UNITED STATES DISTRICT COURT
# DISTRICT OF WASHINGTON - EASTERN

| | |
|---|---|
| **DANIKA DENTON,** | Case No.: 17-cv-3202 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| **CITY OF YAKIMA,** a Washington municipal corporation; | |
| Defendant. | |

Plaintiff **DANIKA DENTON,** through attorney of record **ADAM P. KARP** of **ANIMAL LAW OFFICES,** alleges:

## I. JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 2201, and 2202; and venue is properly set in the United States District Court for Eastern District of Washington pursuant to 28 U.S.C. § 1391.

2.  The causes of action arise from factual allegations occurring in this judicial district.

3.  Plaintiff **DANIKA DENTON** resides in the City of Yakima.

COMPLAINT (17-cv-3202) - 1

4.      Defendant **CITY OF YAKIMA** ("City") is a municipal corporation, organized under the laws of the State of Washington, including for purposes of liability under 42 U.S.C. § 1983.

5.      As a result of Defendant's actions, Danika has suffered or continues to suffer irreparable economic and noneconomic damage, and irreversible and adverse declarative and injunctive harm, including violation of her constitutional rights.

6.      Denton's claim for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988, the Americans with Disabilities Act; 42 U.S.C. § 12133 (adopting 29 U.S.C. § 794a); the Federal Fair Housing Act, 42 U.S.C. § 3613(c)(2), and the Washington Law Against Discrimination, RCW 49.60.030(2).

7.      This court has personal jurisdiction over the Defendant.

## II. GENERAL ALLEGATIONS

8.      Denton resides at 10 N. 39th Ave. in Yakima, Wash., which has a perimeter fence enclosing the backyard.

9.      Denton bought her dog Romeo in Summer 2016. No written pedigree or kennel club registration exists to prove his heritage and Denton has independently verified his breed composition.

10.     Denton suffers from clinically diagnosed depression, anxiety, and PTSD, for which Romeo has been prescribed as an assistance animal.

COMPLAINT (17-cv-3202) - 2

11.     Romeo has been individually trained to perform tasks and functions to ameliorate Denton's disabilities. For instance, when Denton has premonitory symptoms of a panic attack, Romeo anticipates and responds, by making close bodily contact with, and leaning on, her. This behavior prevents Denton from disassociating and becoming incapacitated.

12.     Denton has a qualifying disability for purposes of the Americans with Disabilities Act.

13.     Denton has a qualifying disability for purposes of the Federal Fair Housing Act.

14.     Romeo is a "service animal" for purposes of the Americans with Disabilities Act and the Washington Law Against Discrimination.

15.     Romeo is an "emotional support animal" for purposes of the Federal Fair Housing Act.

16.     Romeo has never shown aggression toward any person or animal, and never been cited for an animal control violation. Rather, he possesses a goodly and well-trained nature.

17.     On September 26, 2017, City of Yakima Animal Control Officer Ben Zigan came to Denton's home. He was told that Romeo was a lab mix obtained from Craigslist.

18.     Zigan briefly examined Romeo by visual inspection. Romeo showed

**COMPLAINT (17-cv-3202)** - 3

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

no sign of aggression toward Zigan, who determined that Romeo possessed characteristics of a pit bull. Zigan then told Denton that Romeo needed to be removed from the City even though he had been within city limits for about a year and though Denton told him she had nowhere else to take him.

19.     On October 27, 2017, Zigan seized and impounded Romeo from Denton's residence, informing her that Romeo would be banned from City limits.

20.     On October 27, 2017, hours after impound, Romeo was redeemed from the City shelter and relocated outside City limits, where he has remained to Denton's detriment.

21.     Denton refuses to comply with such discriminatory requirements in order to keep Romeo without threat of prosecution, confiscation, or euthanasia. Below is a true and correct photograph of Romeo.



COMPLAINT (17-cv-3202) - 4

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

### III. CITY OF YAKIMA'S BREED BAN

22. YMC 6.18.020 makes it a gross misdemeanor to keep, harbor, own, or in any way possess a "pit bull dog," defined at YMC 6.18.010 to include purebred American pit bull terriers ("APBT"), Staffordshire bull terriers ("SBT"), American bulldogs ("AB"), and American Staffordshire terriers ("AST"); and crossbreds containing as an element of their breeding the breed of APBT, SBT, AB, or AST so as to be identifiable as partially of such breed.

23. Nothing in Ch. 6.18 YMC sets forth the standards, characteristics, or appearances by which a dog may be reasonably determined to be a "pit bull dog." Nor does it reference any kennel club breed standards or authoritative, objective sources.

24. The American bulldog is not recognized by the American Kennel Club.

25. The minimum fine for violating YMC 6.18.010 is $250 for a first offense, and $500 for a second and subsequent offense, which fine cannot be suspended or deferred. Further, proof of a prior violation obviates the need to prove the same "pit bull dog" was involved. Each day of violation constitutes a separate offense. YMC 6.18.020(A).

26. The foregoing prohibition excludes pit bull dogs who (1) do not reside in the city of Yakima, (2) are brought into the city for the purposes of participating

COMPLAINT (17-cv-3202) - 5

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

in a dog show or canine sporting event for which the owner is able to show proof of entry, (3) do not remain in the city of Yakima for a period exceeding ninety-six consecutive hours, or (4) otherwise meet the specific conditions of an exception to this prohibition in accord with subsection C of this section. YMC 6.18.020(B).

27.     YMC 6.18.020(C) excepts "pit bull service animals," defined as any dog meeting the definition of "pit bull dog" in YMC 6.18.010, who also qualifies as a service animal "in accord with the Animals of America Service and Therapy Animals requirements." YMC 6.18.020(C)(I)(d) and (C)(II).

28.     Subsection (C) was amended to Ch. 6.18 YMC by Ord. No. 2014-008 and became effective on May 18, 2014.

29.     On May 7, 2014, attorney Adam P. Karp contacted the City Attorney raising several arguments contained herein and urging the City to modify and repeal its unconstitutional ordinance. Evidently, such remonstrances failed to facilitate change, harming numerous individuals and animals in the years that followed.

### IV. ANIMALS IN AMERICA

30.     No organization with the name "Animals of America" exists, and the City does not codify the standards this nonexistent entity ostensibly applies.

31.     If, however, the City refers to www.animalsofamerica.com, managed by United Service Animal Registry ("USAR"), it becomes evident from a cursory

COMPLAINT (17-cv-3202) - 6

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

examination of this website that USAR is not operated by the United States government and has no governmental affiliation but, rather, is, on information and belief, a for-profit, Dawsonville, Ga.-based, business run by David Corthell and Carol (presumably Corthell), individuals who advertise via a web presence throughout the country, stating, "USA-R.ORG (USARplus.com) is proud to offer you our phone number – (678) 807-8687 call us today and talk with us. We do hold normal business hours, 9am-7pm  Monday – Friday. But often we are here later – Even earlier and on the weekends. (We don't have a life – so we made our business, and our passion our lives.)" See www.animalsofamerica.com.

32. USAR sells "certifications" to anyone who completes an online application, pays a fee and, in the case of a "Certified Service Animal," uploads a doctor's prescription, latest vaccination records, and a letter of obedience training or a certificate of training indicating that the animal has been specially trained to help with the person's disability.  See https://secure.usa-r.org/Packages.asp (select "Certified Service Animal" to generate pop-up).

33. USAR sells "Therapy Animal Registrations" for a fee but notes "NO PAPERWOK (sic) REQUIRED," adding that a therapy animal "may also be considered an ESA (Emotional Support Animal) but most of the time a therapy animal is taken to hospitals or nursing homes to offer love and kindness to those who need that kind of help, (sic)." See https://secure.usa-r.org/Packages.asp (select

**COMPLAINT (17-cv-3202)** - 7

"Therapy Animal Registration" to generate pop-up).

34.     USAR sells "Service Animal Registrations" for a fee, stating "NO PAPERWORK REQUIRED (Please note: If you cannot prove, in a court of law, that you have a disability you may be subject to possible fines.)," and adding merely that, "A service animal must have specialized training that assist the HANDLER with a disability. A service animal can go to any business and must be allow (sic) entrance. A service animal must be on a leash and can not act agressive (sic) in any way. Remember, only CANINES (DOGS) can be Service Animals." See https://secure.usa-r.org/Packages.asp (select "Service Animal Registration" to generate pop-up).

35.     No "requirements," so named, can be found on the USA-R website relative to service or therapy animals.

36.     "Carol and David" respond to accusations that they are frauds. While they accurately state, "You do not need anything we sell" for purposes of complying with federal law, they offer to "do everything in our power to help you – to talk with that apartment manager – that business owner – that restaurant owner – and help you solve your problem." Evidently, this website is run by two individuals who cannot spell or proof read, and who are engaging in, or offering to engage in, the unlicensed practice of law. See www.animalsofamerica.com/aboutusar.asp.

**COMPLAINT (17-cv-3202)** - 8

37. Thus, the City has delegated to a for-profit business run by two people living out of State, who are arguably committing the unauthorized practice of law, over which it has no control, the right to amend, modify, and revoke the statutory law of the City, and gives such private parties the power to frame and adopt a code which becomes a law carrying penal and forfeiture sanctions, violating the nondelegation doctrine of the Washington State Constitution.

38. If the City did not intend to adopt the representations on the webpage www.animalsofamerica.com, then the ordinance is plainly void for vagueness for there is no ready way a person of ordinary intelligence can find the "Animals of America Service and Therapy Animals requirements."

### V. PIT BULL SERVICE ANIMAL RESTRICTIONS

39. While an owner of a pit bull service animal may keep such dog within City limits, such license imposes restrictions not faced by non-"pit bull" service animals, viz., mandatory spay or neuter; microchipping; confinement indoors unless kept in a locked, "secure pen or enclosure" or a rear yard enclosed by a six-foot fence; muzzling when away from the property of the owner and on a nonretractable leash no longer than four feet in length (subject to modification if necessary and reasonable to permit the animal to perform tasks or functions for the disabled handler); prohibition on selling or transferring to another person living within the City; and self-reporting if the dog is loose, stolen, at large, unconfined,

COMPLAINT (17-cv-3202) - 9

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

has mauled, bitten, attacked, threatened, or in any way menaced another animal or human, or has died. YMC 6.18.020(C)(III).

40.  "Secure pen or enclosure" is defined as a "six-sided structure designed to prevent entry of a child or escape of a pit bull. Such pen or structure must have minimum dimensions of five feet by ten feet per animal housed within and must have secure chain-link sides, a secured top and a secure bottom. The enclosure must provide protection from the elements for the dog. All structures erected to house a pit bull must comply with all zoning and building ordinances and regulations of the city and shall be kept in a clean and sanitary condition. The gate of the pen or enclosure shall be secured with a keyed or combination lock." YMC 6.18.020(C)(I)(f).

41.  Failure to comply with the requirements of YMC 6.18.020(C)(III) results in license revocation and impoundment of the pit bull service animal, per YMC 6.18.020(C)(IV), as well as a civil infraction of $250 for violations other than failure to confine (which is a misdemeanor); than selling or transferring to another within city limits (which is a gross misdemeanor); or than failing to self-report as stated in the preceding paragraph (which is a gross misdemeanor). YMC 6.18.020(C)(V).

42.  The duty to self-report potentially criminal violations further violates the Fifth Amendment protection against self-incrimination.

COMPLAINT (17-cv-3202) - 10

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

43.     The discriminatory onus the foregoing places on purported pit bull service animals and their handlers still fails to pass statutory muster, as it mandates spaying or neutering just for "pit bull dogs" (but not all breeds), and for the subclass of pit bull service animals (but not all other breeds of service animal); compels only disabled individuals to bear the nontrivial expense of spaying, neutering, and microchipping (without any government subsidy); compels disabled individuals to incur potentially thousands of dollars to erect 6' fencing simply to enjoy the use of their backyard (again without government subsidy); stigmatizes the disabled handler further by requiring the service animal to bear a muzzle; and imposes criminal penalties, replete with imprisonment and fines, as well as potential dispossession of a service animal even if the purported pit bull does not engage in any behavior remotely causing risk to others.

## VI. DNA EVIDENCE

44.     YMC 6.18.030(C)(IV) provides the exclusive means to challenge the City's "subjective evidence including observational findings" that the dog is a pit bull, i.e., "DNA Test Evidence," as defined in YMC 6.18.030(C)(I)(h). Cabining the owner's ability to defend against the impoundment and adverse designation (and the sequelae of that adverse determination, such as impoundment and criminal prosecution) by saying that the dog will only be released "as a result of DNA testing," the City has illegally narrowed the scope of admissible evidence afforded

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

the owner, in conflict with the Washington Evidence Rules and Civil Rules for Courts of Limited Jurisdiction.

45.     The most common DNA test used to ascertain breed, for *medical purposes only,* is the Mars Wisdom Panel. The company has expressly disclaimed the use of its test for animal control/regulatory purposes. See www.wisdompanel.com/about_wp/terms_and_conditions/. Thus, the City has delegated to a private corporation, over which it has no control, the right to amend, modify, and revoke the statutory law of the City, and gives such private corporation the power to frame and adopt a code which becomes a law carrying penal and forfeiture sanctions, violating the nondelegation doctrine of the Washington State Constitution.

46.     DNA evidence is inadmissible under ER 702 and the *Frye* standard. Thus, the City has furnished an illusory exception that denudes the vitality of any efforts of the owner to challenge a scientifically invalid and inadmissible visual identification by a Yakima animal control or law enforcement officer. That the DNA defense must be borne at the expense of the dog owner only deepens the constitutional objections of procedural and substantive due process, equal protection, and privileges and immunity.

## VII. STATE OF SCIENCE

47.     The state of science in 2017, including AKC and UKC standards

COMPLAINT (17-cv-3202) - 12

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

themselves, renders purebred and crossbred bans, forfeitures, and related criminal charges, such as threatened by the City's prohibited breed code, not rationally related to any legitimate government purpose and certainly not the least restrictive means available to manage dogs proven harmful by prior misbehavior. Such purebred ban violates the United States and Washington Constitutions.

48.     YMC 6.18.010 fails to publicize the City's precise qualitative or quantitative methodologies or guidelines for determining whether a particular dog "contains as an element of its breeding the breed of [APBT, SBT, AB, or AST]." Further, it fails to identify what constitutes an "element"; what quality or quantity of evidence proves same; and how that evidence may be reliably taken pursuant to Washington Rule of Evidence 702.

49.     YMC 6.18.010 fails to publicize the City's precise qualitative or quantitative methodologies or guidelines for determining whether a particular dog is "identifiable as partially of the breed of [APBT, SBT, AB, or AST]." Further, it fails to identify what characteristics are "identifiable," how many characteristics make a dog "identifiable," how must such identification be made (e.g., visual, DNA, other), what suffices as "partially"; what quality or quantity of evidence proves the foregoing; and how that evidence may be reliably taken pursuant to Washington Rule of Evidence 702.

50.     The City code's "pit bull dog" definition fails to quantify what genetic

**COMPLAINT (17-cv-3202)** - 13

increment constitutes same, and fails to provide fair warning of those circumstances where genetics manifest physically to an ascertainable and sufficient phenotypic degree. Instead, it determines prohibited conduct according to the often-uneducated eye of the regulator, in violation of the United States and Washington Constitutions.

51. No ascertainable (much less authoritative) source exists for mixed breed standards to which a government official may refer to avoid exercising unbridled, highly subjective discretion in "identifying" a dog as wholly or partially of the prohibited breeds, in violation of the United States and Washington Constitutions.

### VIII. CITY OF YAKIMA'S PROCEDURAL AND SUBSTANTIVE INFIRMITIES

52. While a citizen may contest the impoundment of an animal deemed a "pit bull dog," per YMC 6.20.320, nothing in Chs. 6.18 and 6.20 YMC establishes the burden or standard of proof, or provides for the issuance of *subpoenae duces tecum* or *subpoenae ad testificandum* (whether for deposition or hearing), restricting the dog owner of the ability to meaningfully cross-examine, obtain exculpatory evidence, call witnesses, confront one's accusers, and fully defend.

53. Hence, Chs. 6.18 and 6.20 YMC, relative to impoundment, destruction, adoption to third parties, and banishment, systemically threaten and

COMPLAINT (17-cv-3202) - 14

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

disrespect, *inter alia*, the United States and Washington Constitutions.

54.     The penalties imposed against dogs declared "pit bull dog" based solely on breed and not behavior, when those canines have no demonstrated history or any allegation of aggression toward animals or humans, but who only face these restrictions (i.e., banishment or death) due to a perceived, imprecise, and methodologically deficient and inaccurate visual identification, violate the United States and Washington Constitutions.

55.     Ch. 6.18 YMC systematically violates the rights of those with "pit bull dog" emotional support animals under the Federal Fair Housing Act by only purporting to make exception for *service animals.*

56.     On November 20, 2017, Mr. Karp again corresponded and spoke with the City Attorney to discuss the deficiencies of this ordinance and, thus, aid in discontinuing expenditure of public funds pursuant to the City's patently unconstitutional code. To date, the City has failed to respond, cure, correct, or revise same.

57.     In this correspondence of November 20, 2017, without any waiver implied or intended, and under a full reservation of rights to challenge that any "pit bull dog" should be deemed illegal to own, keep, harbor, or possess within the City, as well as to challenge whether Romeo met the definition of "pit bull dog," Mr. Karp sought a reasonable accommodation from the "pit bull service animal"

**COMPLAINT (17-cv-3202)** - 15

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

restrictions by asking that the City completely exempt him from same. In that correspondence, Mr. Karp attached a letter from Denton's health care provider, who confirmed her diagnoses and the amelioration provided by Romeo. To date, the City has not granted the requested accommodation.

## IX. CLAIMS FOR RELIEF AGAINST CITY OF YAKIMA

58.    All allegations above are incorporated by reference and reasserted as to claims below.

59.    **FIRST CLAIM** – **Retrospective and Prospective Injunctive Relief for Ongoing Violation of Federally-Protected Constitutional and Statutory Rights (28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983, 42 U.S.C. § 12101 et seq., 42 U.S.C. § 3601 et seq.)**

   i.   To permit Denton to own, keep, harbor, and possess Romeo within City limits without any restriction other than those applicable to all other dogs;

   ii.  To strike Ch. 6.18 YMC in its entirety as unconstitutional under the State and Federal Constitutions as to purebreds and crossbreds;

   iii. To strike YMC 6.18.020(C) for violating the Americans with Disabilities Act and Fair Housing Act in discriminating against people with disabilities by imposing dissimilar and burdensome requirements on those with "pit bull dogs"; and

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

    iv.    To enjoin the City from enforcing the breed-specific aspects of the Code, and from enacting breed-specific prohibitions for the reasons given herein.

60.    **SECOND CLAIM** – **Final Retrospective and Prospective Declaratory Judgment for Ongoing Violation of Federally-Protected Constitutional and Statutory Rights (28 U.S.C. §§ 2201-2202, 42 U.S.C. § 1983)**

    i.    Finding Ch. 6.18 YMC, in its entirety, unconstitutional under the State and Federal Constitutions, as to purebreds and crossbreds;

    ii.    Finding YMC 6.18.020(C) in violation of the Americans with Disabilities Act and Fair Housing Act in discriminating against people with disabilities by imposing dissimilar and burdensome requirements on those with "pit bull dogs"; and

    iii.    Voiding *ab initio* any determination (and related penalties or restraints based thereon) that any person's dog is a "pit bull dog" or "pit bull service animal."

61.    **THIRD CLAIM** – **Violation of Title II of the Americans with Disabilities Act and Implementing Regulations (42 U.S.C. § 12101, et seq., as amended, and 28 CFR Part 35)** by discriminating against Denton in imposing dissimilar and burdensome requirements on her should she attempt to own, keep,

**COMPLAINT (17-cv-3202)** - 17

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

harbor, or possess Romeo within the City, compared to other disabled individuals with service animals the City does not deem "pit bull dogs."

62. **FOURTH CLAIM** – **Violation of Federal Fair Housing Act and Implementing Regulations (42 U.S.C. § 3601, et seq., as amended, and 24 CFR Part 100)** for discriminating against Denton by refusing to let her own, keep, harbor, or possess Romeo as an emotional support animal within the City.

63. **FIFTH CLAIM** – **Violation of Washington Law Against Discrimination (RCW 49.60.030)** by discriminating against Denton in imposing dissimilar and burdensome requirements on her should she attempt to own, keep, harbor, or possess Romeo within the City, compared to other disabled individuals with service animals the City does not deem "pit bull dogs."

## PRAYER

WHEREFORE, Denton prays for judgment against Defendant as follows:

A. For declaratory and injunctive relief as stated;

B. For costs of suit;

C. For reasonable attorney's fees and other litigation-related costs as allowed by statute and equity, or in the alternative, statutory attorney's fees; and

D. For such other and further relief as the Court may deem just and proper.

Dated this December 4, 2017.

ANIMAL LAW OFFICES

**COMPLAINT (17-cv-3202)** - 18

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

*/s/ Adam P. Karp*
_____
Adam P. Karp, WSBA No. 28622
Attorney for Plaintiffs Danika Denton
114 W. Magnolia St., Ste. 400-104
Bellingham, WA  98225
(888) 430-0001
adam@animal-lawyer.com

**COMPLAINT (17-cv-3202)** -   19

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com